IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| DIANNE A. BIDDLE, ) | |
| Plaintiff, ) | |
| vs. ) | CIVIL ACTION CV 99-J-1874-NW |
| ) | |
| JACKSON COUNTY BOARD OF ) EDUCATION, et al., ) | |
| Defendants. | |

AUG 2 4 2000

**MEMORANDUM OPINION**

This matter comes before this court on defendants' motion for judgment as a matter of law pursuant to Rule 52(c) of the Federal Rules of Civil Procedure. Based on the testimony and evidence presented to the court by plaintiff during a non-jury trial, the court hereby grants defendants' motion and does find for the defendants and against the plaintiff on all counts in the complaint.

The plaintiff, Dianne Biddle, has worked in the Jackson County School system since 1977 when she began teaching seventh and eighth-grade English and math at Skyline School. In 1978 plaintiff was transferred to Section High School and taught the fifth through eighth grade, all subjects until 1990. In 1990 the plaintiff began working as a counselor at Bridgeport Middle School and Bridgeport Elementary School. She would

1

counsel students at Bridgeport Middle School for half a day and spend the remaining time counseling students at Bridgeport Elementary School.

Plaintiff has a bachelor of science degree in psychology with a minor in biology and a masters degree in counseling. She is certified to teach elementary education, in 1986 she received certification in school counseling. In 1996 plaintiff became certified in educational administration and in 1998 plaintiff earned an E.D.S. degree in counseling.

The principal position at Bridgeport Middle School became vacant in 1997 when the previous principal, who is currently a defendant in this lawsuit, Grant Barham was elected Superintendent of the Jackson County School system. The plaintiff applied for the principal position.

Superintendent Barham selected a committee to interview all of the applicants and recommend two for the Bridgeport Middle School vacancy. The interviewing committee consisted of four persons, two Bridgeport Middle School teachers: Becky McCoy and Kay Wilkey; and two Bridgeport Middle School trustees: Tim Rudder and Cindy Steele. The committee recommended Kathy Hughes and Craig Robbins. Superintendent Barham then recommended Craig Robbins to the Jackson County Board of Education (Board) which approved the selection and hired Mr. Robbins as principal of Bridgeport Middle School.

In 1998 plaintiff applied for the position of principal at Bridgeport Elementary School. Plaintiff was again interviewed by a committee. This committee consisted of three Bridgeport Elementary School trustees: Brian Phillips, Mack Wilkey, and Steve

2

Thomas. The committee recommended Robert Downey, Linda Allen, and Ralph Thornhill to Superintendent Barham. Superintendent Barham then recommended Robert Downey to the Board which approved the selection and hired Mr. Downey as principal of Bridgeport Elementary School.

Plaintiff filed suit alleging gender discrimination against defendants Jackson County School Board and Jackson County School Superintendent Grant C. Barham. The Plaintiff claimed disparate treatment discrimination occurred when she was denied the position of principal at Bridgeport Middle School and when she was denied the principal position at Bridgeport Elementary School. Plaintiff further alleged the defendants had a pattern and practice of gender discrimination.[1]

## Disparate Treatment`

Plaintiff claims the defendants' intentionally discriminated against her by not hiring her for the principal position either at Bridgeport Middle School or Bridgeport Elementary School. Plaintiff alleges two theories under which the defendants discriminated: disparate treatment and pattern and practice. Both theories require a showing of discriminatory intent. *EEOC v. Joe's Stone Crab, Inc.*, 2000 WL 1089555, *7 (11th Cir.).

---

[1] The court notes the plaintiff filed "Parties Agreed Proposed Finding of Fact" with the court and that said document does not contained a proposed agreed finding of fact but merely restates what plaintiff alleged in her pre-trial order submission.

3

To prevail on a disparate treatment claim the plaintiff must prove the employment decision was taken "because of the plaintiff's sex." *EEOC,* at *7. Plaintiff can prove discriminatory intent through direct or circumstantial evidence. *Id.,* at *18. Direct evidence is evidence from which a reasonable fact finder "could find, more probable than not, a causal link between an adverse employment action and a protected personal characteristic." *Wright v. Southland Corp.*, 187 F.3d 1287, 1293 (11th Cir. 1999). Circumstantial evidence of intentional discrimination may be proved through the familiar *McDonnell Douglas* burden shifting framework. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *Holifield v. Reno*, 115 F.3d 155, 1564 (11th Cir. 1997). Regardless of whether direct or circumstantial evidence is present, the ultimate question in a sex discrimination case is whether an employment decision was made due to the plaintiff's sex. *EEOC*, at *7; *Wright v. Southland Corp.*, 187 F.3d 1287, 1293 (11th Cir. 1999).

Plaintiff testified that she overheard two conversations where defendant Barham said a man would be best for the Bridgeport Middle School job and had one conversation with Barham where she was told the community wanted a local man for Bridgeport Middle School principal. While this might constitute direct evidence of discriminatory intent, the bridge of causality fails when examined in light of the hiring process. *See Wright*, at 1300.

Plaintiff had to interview with a committee of two trustees and two teachers for the Bridgeport Middle School job. This committee consisted of three females. One of the interviewing committee members, Becky McCoy, testified that the committee was given

no instruction or guidelines from Barham other than to recommend two persons. Barham submitted every qualified applicant's name to the committee and every qualified applicant was granted an interview regardless of gender. Barham did not suggest who the committee should choose and did not influence the committee's choice in any way. McCoy testified that there was no discussion among the committee, or from Barham, on filling the position with a male.

The committee chose Kathy Hughes and Craig Robbins as its two recommendations. The committee's lack of discriminatory intent is illustrated with the committee's unanimously choosing a female, Kathy Hughes, as its top choice. While it might be argued that Barham may have discriminated against Kathy Hughes by recommending Craig Robbins over her, that action affected only Kathy Hughes and in no way contributed to plaintiff not getting the position.[2] In sum, there is no evidence that the plaintiff did not get the job because of her gender.

There is no direct evidence of discriminatory intent with regard to the Bridgeport Elementary School principal position. After interviewing the applicants, a committee of three Bridgeport Elementary School trustees recommended two males and one female for the position (Defendant Exh. 9). The plaintiff was interviewed but was not recommended for the job. Superintendent Barham recommended Robert Downey for the job and the

---

[2]The court is not suggesting Kathy Hughes was an actual victim of discrimination. The answer to that question has been addressed in separate litigation. The court is simply illustrating the fact that Grant C. Barham has taken no action that impeded plaintiff's opportunity to become principal.

5

Board approved the recommendation. Mr. Downey had achieved his administration certification seven years earlier than the plaintiff and, unlike the plaintiff, had administrative experience as an assistant principal. Again, Mr. Barham did not affect the committee's selection in any way.

With respect to the defendant Board, there is no causal link between plaintiff's gender and her not being hired as principal at Bridgeport Middle School or Bridgeport Elementary School. Both positions were filled upon Superintendent Barham's recommendation which came directly from the interviewing committee's recommendation. The president of the Board, Foy McCrary, testified that plaintiff would have been hired if Barham had recommended her. He also testified her sex would not have affected any Board decision and that the sole extent of the Board's involvement in the filling of such vacancies was by voting upon Superintendent Barham's recommendation. Furthermore, Mr. McCrary testified that other than those recommended by Barham to the Board, he did not know who had applied for those positions. In other words he did not even know that plaintiff was an applicant. Clearly the Board did not intentionally discriminate against the plaintiff when it was not even aware of her application. There is no evidence indicating plaintiff was denied the positions because of her gender.

## Pattern and Practice

Proof of discriminatory intent is also required for claims of pattern and practice

discrimination. *EEOC,* at *7. To meet this burden the plaintiff must "prove more than the mere occurrence of isolated or accidental or sporadic discriminatory acts. It has to establish by a preponderance of the evidence that [sex] discrimination is the [defendants'] standard operating procedure. . ." *EEOC,* at *18 *quoting International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843 (1977). A plaintiff can establish such a claim "through a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally." *EEOC,* at *19 *quoting Mozee v. American Commercial Marine Service Co.,* 940 F.2d 1036, 1051 (7th Cir. 1991).

Plaintiff attempted to prove a disparate statistical result by comparing the percentage of Jackson County School system female employees with the percentage of female administrators. This comparison is improper because it takes into account all female employees, including bus drivers, custodians, and cafeteria workers, regardless of their qualifications and desire for administrative position. Statistical disparity analysis should focus on the percentage of female applicants compared to the percentage of females hired. *EEOC,* at *9.

For the years 1997-1999 (years under the current Jackson County School administration) 27% of the applicants for principal were female and 37% of the principal appointments went to female applicants. 33% of assistant principal appointments went to

females for the same time period[3] (Defendant's Exh. 17). Under this analysis a statistical disparity does not exist, and clearly the statistics are not sufficient for a finding of pattern and practice discrimination.

Plaintiff attempted to argue the hiring process used by Jackson County created gender discrimination. The main thrust of this argument centered on the utilization of trustee committees for interviewing applicants. However there was no evidence that any such committee had any bias against women. Both committees involved with the plaintiff's applications at Bridgeport Middle and Bridgeport Elementary recommended women for the respective positions.

The trustees at the two schools were duly selected pursuant to §16-10-1. Ala. Code (1975). The use of trustees for hiring seems reasonable in light of the fact that trustees have the statutory authority to reject persons hired by the Board. Ala. Code §16-10-4 (1975); *Cleburne County Bd. of Educ. v. Payne*, 518 So.2d 49 (Ala. 1987) (Trustees have power to reject principal appointments.) . Furthermore there is no evidence that anyone tried to influence these committees to choose men for the positions.

Plaintiff has failed to prove that she was denied the principal positions at Bridgeport Middle School or Bridgeport Elementary School because of her gender. There is no evidence that pattern and practice discrimination exists in the Jackson County system or that such discrimination barred the plaintiff's principal aspirations. The court

---

[3]Not all the of data for percentage of female assistant principals was available because such records are kept by principals at the respective schools and not at the central office. However plaintiff presented no proof to contradict defendants' statistical evidence.

therefore finds for the defendants and against the plaintiff on all counts in the complaint.[4]

**DONE** and **ORDERED** this 24 day of August, 2000.

                                                            */s/ Inge P. Johnson*
                                                            Inge P. Johnson
                                                           U.S. District Judge

---

[4]The court also notes that the plaintiff failed to prove monetary damages during her case presentation.